UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH ROSENKRANTZ, Derivatively on Behalf of VASO ACTIVE PHARMACEUTICALS, INC., | No. 04 10792 RCL |
| Plaintiff, | |
| vs. | DERIVATIVE ACTION |
| BIOCHEMICS, INC., WILLIAM P. ADAMS, ROBERT E. ANDERSON, STEPHEN G. CARTER, GARY FROMM, JOHN J. MASIANO, KEVIN J. SEIFERT, BRUCE A. SHEAR and BRIAN J. STRASNICK, | MAGISTRATE JUDGE Collings |
| Defendants, | |
| -and- | |
| VASO ACTIVE PHARMACEUTICALS, INC., a Delaware Corporation, | |
| Nominal Defendant. | DEMAND FOR JURY TRIAL |

FILED
Clerk's Office
USDC, Mass.
Date 4-20-04
By T.O.M.
Deputy Clerk

**VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT**

RECEIPT # ___
AMOUNT $ 150
SUMMONS ISSUED YES
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. TOM
DATE 4-20-04

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought in the right of, and for the benefit of, nominal defendant Vaso Active Pharmaceuticals, Inc. ("Vaso" or the "Company") against its Board of Directors (the "Board") and certain top officers to remedy defendants' breaches of fiduciary duties and other violations of law which have inflicted millions of dollars in damages upon Vaso's reputation, goodwill and standing in the business community and have exposed it to millions of dollars in potential liability for violations of state and federal law. This action arises out of defendants causing Vaso to file false financial statements and to issue misleading statements and conceal material facts from investors and the public concerning certain of the Company's key and primary products under review by the Food and Drug Administration ("FDA"), between December 11, 2003 and March 31, 2004 (the "Relevant Period"). Defendants' misconduct has caused severe, irreparable injury and damages to the Company, particularly to its reputation and goodwill in the investment and business community, and has virtually destroyed this once valuable franchise.

## SUMMARY OF THE ACTION

2. Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on vaso active lipid encapsulated, or VALE, transdermal delivery technology drugs. Currently, Vaso markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company is planning to rebrand the deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

3. On February 5, 2004, the Securities and Exchange Commission ("SEC") and the FDA announced plans to work together in an attempt to crack down on companies that make false and misleading statements concerning their products under review by the FDA. On that date, the SEC issued a press release entitled "SEC, FDA Take Steps to Enhance Inter-Agency Cooperation" which stated in relevant part:

2

The Securities and Exchange Commission announced today that members of its senior staff and senior personnel of the Food and Drug Administration (FDA) are continuing and enhancing their cooperative efforts in support of the Commission's activities. An exchange of letters memorializes the initiatives to be taken by the FDA to support the Commission in carrying out its mission to protect investors and maintain the integrity of the nation's securities markets.

The FDA generally assists the Commission by:

* providing technical assistance, when appropriate, to the Division of Corporation Finance in its review of Commission filings, and

* providing documents and information to the Division of Enforcement.

These forms of assistance to the staff will continue, but with certain enhancements.

Among the initiatives described in the letters exchanged by the SEC and FDA staff are:

A centralized procedure adopted by the FDA for referring to the SEC staff possible instances of securities laws violations by public companies regulated by the FDA.

Identification of contacts in each of the FDA's main organizational components (known as Centers) to serve as points of contact for the SEC and its staff to use in requesting information from FDA. These individuals would be responsible for assuring that such requests are handled promptly and thoroughly.

The continued sharing of non-public information by the FDA with the SEC, consistent with FDA's current practice, and a commitment to endeavor to take steps to further expedite this process.

Stephen M. Cutler, Director of the Commission's Division of Enforcement, and a signatory of the SEC's letter, said, "The Commission staff appreciates FDA's strong interest in coordinating our agencies' activities in a cooperative manner. ***When companies misrepresent the status of the FDA's review of their products, investors can be harmed. We are eager to continue working with the FDA to aggressively address such situations and to enhance our already-productive relationship.***"

4. On April 1, 2004, the SEC issued a Trading Suspension release which stated it was temporarily suspending trading of Vaso's common stock effective on that date "because of questions regarding the accuracy of assertions by [Vaso] and by others, in press releases, its annual report, its registration statement and public statements to investors concerning, among other things: (1) FDA

3

approval of certain key products, and (2) the regulatory consequences of the future application of their primary product."

5. Subsequently, also on April 1, 2004, *Reuters* issued a release entitled "UPDATE - SEC suspends trading in Vaso Active stock." The release stated in part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals Inc., a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the Danvers, Massachusetts-based company of an FDA approval of certain key products and regulatory consequences of the future application of their primary product, among others.
>
> Vaso Active was not immediately available for comment.
>
> The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.
>
> Vaso shares closed at $7.59 Wednesday on Nasdaq.

6. On April 7, 2004, the defendants caused the Company to issue a press release confirming the suspension of its stock by the SEC and stating it had been notified by Nasdaq that its common stock would be delisted effective upon the opening of the market the next day. The press release also stated that the Company would cease selling its product pending the SEC Investigation and directing investors not to rely on its existing reports.

7. Indeed, on April 8, 2004, the Company's stock was delisted by Nasdaq and is now quoted on the National Quotation Service Bureau (the "Pink Sheets") for unsolicited trading under the symbol vaph.pk.

8. The true facts, which were known by each of the defendants but actively concealed from the investing public during the Relevant Period, were as follows:

(a) The Company's claims that its "clinical trial" was "supervised by independent physicians and analyzed by the New England Medical Center in Boston," Massachusetts was grossly

4

misleading in that:

 (i) the New England Medical Center had nothing to do with the study associated with the "clinical trial";

 (ii) the New England Medical Center was unable to draw any conclusions concerning the effectiveness of the product and played no role in selecting the patients and gathering evidence; and

 (iii) the trial was *not* supervised by "*independent* physicians" – it was overseen by *one* podiatrist who was not independent but actually "handpicked" by the Company's majority shareholder and handsomely compensated;

(b) The Company's so-called "clinical trial" was not new or revolutionary but rather more than half a decade old;

(c) The American Association of Medical Foot Specialists and its so-called "endorsement" of deFEET was of little, if any, value. In fact, the "association" is not widely known of or respected in the medical community. It was headquartered in a hotel until it was moved to the President's medical office. Moreover, in exchange for the questionable endorsement of the President of the Association, Vaso was asked to make a donation to an association scholarship program; and

(d) Contrary to defendant Masiz's claim that there was significant demand for the Company's stock at an "institutional level" – so much so that the Company, in response to this demand, consummated a three-for-one stock split – there was *de minimus*, if any, institutional demand for the Company's shares. Moreover, there are no institutional or retail analysts who even follow the Company.

9. As a direct result of this illegal course of conduct, the Company has been exposed to tens of millions of dollars in potential liability for violations of the nation's securities laws and regulations and has been named in numerous federal securities class action lawsuits filed in the

United States District Court for the District of Massachusetts, on behalf of investors who purchased Vaso's shares. These lawsuits allege that investors purchased shares of the Company based on false and materially misleading statements regarding the financial condition of the Company and that they have been significantly damaged thereby.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 (a)(2) in that plaintiffs and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

11. This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

12. Venue is proper in the Court because nominal defendant Vaso is headquartered in this District and thus a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District. One or more of the defendants either resides in or maintains executive offices in this District, and defendants have substantial contacts in this District by engaging in numerous activities and conducting business here, which had an effect in this District.

## PARTIES

13. Plaintiff Joseph Rosenkrantz is, and was at relevant times complained of herein, a shareholder of nominal defendant Vaso. Plaintiff is a resident of California.

14. Nominal defendant Vaso is a Delaware corporation with its principal executive offices located in Danvers, Massachusetts. BioChemics, Inc. ("BioChemics") is the Company's controlling shareholder. As reported in the Company's Proxy Statement: "BioChemics, Inc. owns all

6

the Company's Class B common stock. Because our Class B common stock has three votes per share, BioChemics controls 70% of the total votes outstanding. Our President and Chief Executive Officer John Masiz is also Chief Executive Officer, President and Contolling stockholder of BioChemics." The Company began as a division of BioChemics in January 2001 and has operated as a independent entity since January 2003. The Company received initial funding from BioChemics and has numerous financial transactions with BioChemics including a Licensing Agreement, Manufacturing and Development Agreement, a Registration Rights Agreement as well an Office Space, Administrative Services and Financial Support Agreements.

15.     Defendant BioChemics is the parent company of Vaso and its controlling shareholder. As a controlling shareholder, BioChemics owes the Company and its shareholders a fiduciary duty. The Company began as a division of BioChemics in January 2001 and has operated as an independent entity since January 2003. The Company received initial funding from BioChemics and has numerous financial transactions with the BioChemics including a Licensing Agreement, Manufacturing and Development Agreement, a Registration Rights Agreement as well an Office Space, Administrative Services and Financial Support Agreements. Defendant John J. Masiz ("Masiz") is Chief Executive Officer ("CEO") and Chairman of both BioChemics and Vaso and defendant Stephen G. Carter ("Carter") is Chief Scientific Officer ("CSO") of both BioChemics and Vaso. The Company's deFEET product was introduced to the marketplace by BioChemics while the Company was still a division of BioChemics. As stated in the Company's Registration Statement filed on December 11, 2003, "[w]e depend on BioChemics to provide us with certain support and services. The loss of such support and services would have a material adverse effect on our business." In addition, Vaso has limited product development capabilities and no manufacturing ability. As a result, the Company is dependent upon BioChemics to manufacture its products. By virtue of the foregoing, BioChemics was aware of the Company's communications with the FDA and breached its fiduciary duties by participating in and/or failing to correct the Company's improper financial statements and press releases described herein.

16. Defendant Masiz was, at all relevant times, Chairman of Vaso, its CEO and its President. Masiz is a citizen of Massachusetts. As an officer and director of Vaso, Masiz owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as its Chairman, CEO and President, Masiz had also assumed important managerial responsibilities at Vaso which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Masiz owed to Vaso and its shareholders he actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Vaso by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. As a result of his significant ownership of the Company's Class A and B common stock, as of March 18, 2004, Masiz beneficially owned shares representing approximately 70% of the combined voting power of the outstanding common stock of the Company and thus as stated in the Company's Registration Statement filed on December 11, 2003 "control[s] the outcome of stockholder votes, including votes concerning the election of ... directors." Thus, Masiz totally dominates and controls Vaso's Board. Masiz is also Chairman and CEO of BioChemics, the Company's controlling shareholder and defendant Carter is BioChemics CSO. Masiz signed the Company's materially false and misleading Registration Statement and Annual Report for Fiscal Year ("FY") 03 and thus is a direct participant in the wrongdoing. Masiz is a named defendant in the securities class action lawsuits. In addition to his annual salary of $175,000 per year, Masiz currently owns 300,000 options to purchase Vaso stock. According to the Company's 2003 Stock Incentive Plan, if Masiz's employment is terminated these options, including those not vested and exercisable as well as those already vested and exercisable, will expire and be forfeited. Thus, as these options run into the millions of dollars, Masiz has every incentive to maintain his position at Vaso. By virtue of his executive positions with Vaso, his longer term personal, professional and financial relationships with defendants Carter, Kevin J. Seifert ("Seifert") and other members of the Vaso Board, his personal participation in the underlying misconduct, and

his substantial ownership of Vaso stock options, Masiz is not disinterested, is not independent and could not have adequately considered a pre-suit demand to bring the allegations contained herein.

17.     Defendant Seifert was, since February 19, 2004, a director of Vaso, and during all relevant times, its Chief Operating Officer ("COO"). Seifert is a citizen of New Jersey. As an officer and director of Vaso, Seifert owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as its COO, Seifert had also assumed important managerial responsibilities at Vaso which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Seifert owed to Vaso and its shareholders he actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Vaso by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Seifert signed the Company's materially false and misleading Annual Report for FY 03 and thus is a direct participant in the wrongdoing. In addition to his annual salary of $200,000 per year and bonus of $150,000 for FY 03, Seifert currently owns 225,000 options to purchase Vaso stock. According to the Company's 2003 Stock Incentive Plan, if Seifert's employment is terminated these options, including those not vested and exercisable as well as those already vested and exercisable, will expire and be forfeited. Thus, as these options run into the millions of dollars, Seifert has every incentive to maintain his position at Vaso. By virtue of his executive positions with Vaso, his longer term personal, professional and financial relationships with defendants Masiz, Carter and other members of the Vaso Board, his personal participation in the underlying misconduct, and his substantial ownership of Vaso stock options, Seifert is not disinterested, is not independent and could not have adequately considered a pre-suit demand to bring the allegations contained herein.

18.     Defendant Carter was, at all relevant times, a director of Vaso and its CSO. Carter is a citizen of Massachusetts. As an officer and director of Vaso, Carter owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company.

Moreover, as its CSO, Carter had also assumed important managerial responsibilities at Vaso which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Carter owed to Vaso and its shareholders he actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Vaso by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Carter is also CSO of BioChemics, the Company's controlling shareholder. Carter signed the Company's materially false and misleading Registration Statement and Annual Report for FY 03 and thus is a direct participant in the wrongdoing. Carter is a named defendant in the securities class actions. In addition to his annual salary of $140,000 per year, Carter currently owns 225,000 options to purchase Vaso stock. According to the Company's 2003 Stock Incentive Plan, if Carter's employment is terminated these options, including those not vested and exercisable as well as those already vested and exercisable, will expire and be forfeited. Thus, as these options run into the millions of dollars, Carter has every incentive to maintain his position at Vaso. By virtue of his executive positions with Vaso, his longer term personal, professional and financial relationships with defendants Masiz, Seifert and other members of the Vaso Board, his personal participation in the underlying misconduct, and his substantial ownership of Vaso stock options, Carter is not disinterested, is not independent and could not have adequately considered a pre-suit demand to bring the allegations contained herein.

19. Defendant Bruce A. Shear ("Shear") was, at all relevant times, a director of Vaso and a member of its Audit, Nominating and Compensation Committees. Shear is a citizen of Massachusetts. As a director of Vaso, Shear owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Audit, Nominating and Compensation Committees, Shear had also assumed important managerial responsibilities at Vaso which required him to be well informed about the day-to-day operations of the Company, particularly as a member of the Audit Committee with respect to monitoring the

integrity of the financial statements of the Company; ensuring the Company's compliance of all legal and regulatory requirements; and discussing the Company's financial statements with management. Rather than fulfill these important fiduciary duties Shear owed to Vaso and its shareholders he actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Vaso by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Shear signed the Company's materially false and misleading Registration Statement and Annual Report for FY 03 and thus is a direct participant in the wrongdoing. Shear currently owns 60,000 options to purchase Vaso stock. According to the Company's 2003 Non-Employee Director Compensation Plan, if Shear's position as a director is terminated these options, including those not vested and exercisable as well as those already vested and exercisable, will expire and be forfeited. Thus, as these options run into the hundred of thousands of dollars, Shear has every incentive to maintain his position at Vaso. By virtue of his position with Vaso, his longer term personal, professional and financial relationships with defendants Masiz, Seifert, Carter and other members of the Vaso Board, his personal participation in the underlying misconduct, and his substantial ownership of Vaso stock options, Shear is not disinterested, is not independent and could not have adequately considered a pre-suit demand to bring the allegations contained herein.

20.     Defendant Brian J. Strasnick ("Strasnick") was, at all relevant times, a director of Vaso and a member of its Audit, Nominating and Compensation Committees. Strasnick is a citizen of Massachusetts. As a director of Vaso, Strasnick owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Audit, Nominating and Compensation Committees, Strasnick had also assumed important managerial responsibilities at Vaso which required him to be well informed about the day-to-day operations of the Company, particularly as a member of the Audit Committee with respect to monitoring the integrity of the financial statements of the Company and ensuring the Company's compliance of all legal and regulatory requirements; and discussing the Company's financial

statements with management. Rather than fulfill these important fiduciary duties Strasnick owed to Vaso and its shareholders he actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Vaso by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Strasnick signed the Company's materially false and misleading Registration Statement and Annual Report for FY 03 and thus is a direct participant in the wrongdoing. Strasnick currently owns 60,000 options to purchase Vaso stock. According to the Company's 2003 Non-Employee Director Compensation Plan, if Strasnick's position as a director is terminated these options, including those not vested and exercisable as well as those already vested and exercisable, will expire and be forfeited. Thus, as these options run into the hundred of thousands of dollars, Strasnick has every incentive to maintain his position at Vaso. By virtue of his position with Vaso, his longer term personal, professional and financial relationships with defendants Masiz, Seifert, Carter and other members of the Vaso Board, his personal participation in the underlying misconduct, and his substantial ownership of Vaso stock options, Strasnick is not disinterested, is not independent and could not have adequately considered a pre-suit demand to bring the allegations contained herein.

21.     Defendant William P. Adams ("Adams") was, at all relevant times, a director of Vaso and a member of its Nominating Committee and since January 2004 a member of its Compensation Committee. Adams is a citizen of Massachusetts. As a director of Vaso, Adams owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Nominating and Compensation Committees, Adams had also assumed important managerial responsibilities at Vaso which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Adams owed to Vaso and its shareholders he actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Vaso by purposefully, recklessly and/or

negligently disregarding these wrongful acts or omissions. Adams signed the Company's materially false and misleading Registration Statement and Annual Report for FY 03 and thus is a direct participant in the wrongdoing. Adams currently owns 60,000 options to purchase Vaso stock. According to the Company's 2003 Non-Employee Director Compensation Plan, if Adams' position as a director is terminated these options, including those not vested and exercisable as well as those already vested and exercisable, will expire and be forfeited. Thus, as these options run into the hundred of thousands of dollars, Adams has every incentive to maintain his position at Vaso. By virtue of his position with Vaso, his longer term personal, professional and financial relationships with defendants Masiz, Seifert, Carter and other members of the Vaso Board, his personal participation in the underlying misconduct, and his substantial ownership of Vaso stock options, Admas is not disinterested, is not independent and could not have adequately considered a pre-suit demand to bring the allegations contained herein.

22.     Defendant Robert E. Anderson ("Anderson") was, at all relevant times, a director of Vaso and a member of its Nominating Committee and since January 2004 a member of its Compensation Committee. Anderson is a citizen of Massachusetts. As a director of Vaso, Anderson owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Nominating and Compensation Committees, Anderson had also assumed important managerial responsibilities at Vaso which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Anderson owed to Vaso and its shareholders he actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Vaso by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Anderson signed the Company's materially false and misleading Registration Statement and Annual Report for FY 03 and thus is a direct participant in the wrongdoing. Anderson currently owns 60,000 options to purchase Vaso stock. According to the Company's 2003 Non-Employee Director

Compensation Plan, if Anderson's position as a director is terminated these options, including those not vested and exercisable as well as those already vested and exercisable, will expire and be forfeited. Thus, as these options run into the hundred of thousands of dollars, Anderson has every incentive to maintain his position at Vaso. By virtue of his position with Vaso, his longer term personal, professional and financial relationships with defendants Masiz, Seifert, Carter and other members of the Vaso Board, his personal participation in the underlying misconduct, and his substantial ownership of Vaso stock options, Anderson is not disinterested, is not independent and could not have adequately considered a pre-suit demand to bring the allegations contained herein.

23.     Defendant Gary Fromm ("Fromm") was, at all relevant times, a director of Vaso and a member of its Nominating Committee. Fromm is a citizen of Washington, DC. As a director of Vaso, Fromm owed a duty to the Company and its shareholders to be reasonably informed about the business and operations of the Company. Moreover, as a member of its Nominating Committee, Fromm had also assumed important managerial responsibilities at Vaso which required him to be well informed about the day-to-day operations of the Company. Rather than fulfill these important fiduciary duties Fromm owed to Vaso and its shareholders he actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein, and/or breached his fiduciary duties to the shareholders of Vaso by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions. Fromm signed the Company's materially false and misleading Registration Statement and Annual Report for FY 03 and thus is a direct participant in the wrongdoing. Fromm currently owns 60,000 options to purchase Vaso stock. According to the Company's 2003 Non-Employee Director Compensation Plan, if Fromm's position as a director is terminated these options, including those not vested and exercisable as well as those already vested and exercisable, will expire and be forfeited. Thus, as these options run into the

hundred of thousands of dollars, Fromm has every incentive to maintain his position at Vaso. By virtue of his position with Vaso, his longer term personal, professional and financial relationships with defendants Masiz, Seifert, Carter and other members of the Vaso Board, his personal participation in the underlying misconduct, and his substantial ownership of Vaso stock options, Fromm is not disinterested, is not independent and could not have adequately considered a pre-suit demand to bring the allegations contained herein.

24. The defendants identified above in ¶¶ 16-23 are collectively referred to hereinafter as the "Individual Defendants."

**FACTS**

25. Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on VALE transdermal delivery technology drugs. Currently, the Company markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company, at the time of the IPO, was planning to rebrand the deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

26. Vaso is essentially an early stage company focused on commercializing, marketing and selling over-the-counter, or OTC, pharmaceutical products. It began its operations as a division of BioChemics, Inc. in January 2001, and has only operated as an entity independent of BioChemics since January 2003. The Company's operating history was extremely limited. The deFEET, Athlete's Relief and Osteon products were in the early stages of commercialization as the Company prepared to go public. With the exception of the introduction of deFEET to the marketplace by BioChemics while the Company was still a division of BioChemics (a company also controlled by

Masiz and Carter), it had not yet commercialized, marketed or sold any products or recognized significant revenue from product sales.

27. On April 1, 2004, the SEC issued Trading Suspension Release No. 34-49514 entitled "Trading Suspension: Vaso Active Pharmaceuticals, Inc." which stated:

> The Securities and Exchange Commission announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (the "Exchange Act"), of trading of the securities of Vaso Active Pharmaceuticals, Inc., ("VAPH") of Danvers, Massachusetts at 9:30 a.m. on April 1, 2004, and terminating at 11:59 p.m. on April 15, 2004.
>
> ***The Commission temporarily suspended trading in the securities of VAPH because of questions regarding the accuracy of assertions by VAPH and by others, in press releases, its annual report, its registration statement and public statements to investors concerning, among other things: (1) FDA approval of certain key products, and (2) the regulatory consequences of the future application of their primary product.***
>
> ***The Commission cautions broker dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company.***
>
> Further, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the trading suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. If any broker or dealer has questions as to whether or not he has complied with the rule, he should not enter any quotation but immediately contact the staff of the Securities and Exchange Commission in Washington, D.C. If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to VAPH's securities until such time as he has familiarized himself with the rule and is certain that all of its provisions have been met. If any broker or dealer enters any quotation, which is in violation of the rule, the Commission will consider the need for prompt enforcement action.
>
> If any broker dealer or other person has any information, which may relate to this matter, the Division of Enforcement of the Securities and Exchange Commission should be telephoned at (202) 942-4677.

28. Subsequently, also on April 1, 2004, *Reuters* issued a release entitled "UPDATE - SEC suspends trading in Vaso Active stock." The release stated in part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals Inc., a marketer of over-the-counter pharmaceuticals, through April 15.

> The Securities and Exchange Commission questioned assertions made by the Danvers, Massachusetts-based company of an FDA approval of certain key products and regulatory consequences of the future application of their primary product, among others.
>
> Vaso Active was not immediately available for comment.
>
> The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.
>
> Vaso shares closed at $7.59 Wednesday on Nasdaq.

29. On April 7, 2004, the Individual Defendants caused the Company to issue a press release entitled: "Vaso Active Pharmaceuticals Announces Suspension of Trading of its Common Stock and Advises That its Public Reports and Certain Other Publicly Released Information Should Not Be Relied upon and it Has Determined to Cause its Securities to Be Removed from Nasdaq" which stated:

> Vaso Active Pharmaceuticals, Inc. today announced that the U.S. Securities and Exchange Commission (the "Commission") temporarily suspended trading of the securities of Vaso Active Pharmaceuticals, Inc. ("VAPH"), effective 9:30 a.m. on April 1, 2004. The suspension, by its terms, terminates at 11:59 p.m. on April 15, 2004. The Commission also stated that it temporarily suspended trading in the securities of the Company because of questions regarding the accuracy of assertions by the Company and by others, in press releases, its annual report, its registration statement and public statements to investors concerning, among other things: (1) the U.S. Food and Drug Administration ("FDA") approval of certain key products, and (2) the regulatory consequences of the future application of their primary product. The Commission cautioned broker-dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the Company. Further, the Commission advised that brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Securities Exchange Act of 1934 (the "Exchange Act"), at the termination of the trading suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. A copy of the full text of the Commission release, announcing the trading suspension, may be found at the following hyperlink: http://www.sec.gov/litigation/suspensions/34-49513.htm.
>
> On April 5, 2004, representatives of the Company, together with newly retained special securities counsel and newly retained FDA counsel, met with the Staff of the Commission (the "Staff") for the purpose of discussing the concerns that led to the suspension of trading of the Company's securities. During that meeting, the Company stated its intention to review its public disclosure, press releases and other public statements and to take whatever remedial action may be appropriate. It also represented that it would diligently seek to clarify the status of its products under

current FDA regulations, would issue disclosure regarding the FDA regulation of its activities and products and the results of its dialogue with the FDA, and would endeavor to resolve on a timely basis any concerns communicated by the Staff. *The Staff stated that it had been authorized by the Commission to seek injunctive relief against the Company, articulated the concerns that gave rise to the suspension of trading, and informally requested that the Company provide certain information to the Staff. The Company agreed to cooperate with the Staff, committed to review its disclosure promptly and committed to take any remedial action that may be required.*

The Company cannot predict what, if any, actions may be taken by the Commission; nor is the Company aware whether the FDA is contemplating any action against the Company. The Company, through counsel, intends to commence dialogue with the FDA promptly to address any FDA concerns.

*Due to the ongoing nature of this matter, the Company is unable to assess definitively its impact, except that the Company has committed not to sell its products until this matter has been concluded to the satisfaction of the Commission. The commitment to refrain from selling the Company's products may have a material adverse impact on the Company. The Company will make public announcements and will file public reports with the Commission, when appropriate, including a complete description of regulations applicable to the Company's products and operations, as well as disclosure regarding the status of its products under applicable FDA regulations. No estimate can be given as to the date when the Company's efforts to revise its disclosure will be completed; nor can any estimate be given as to the date when its securities will resume trading. However, the Company is reasonably certain that the necessary disclosures and filings will not be made prior to the termination of the current trading suspension, and, therefore, the Company believes that its securities will not be able to be traded at that time. The Company will not seek to have its securities resume trading until it is reasonably comfortable that the concerns that gave rise to the trading suspension have been satisfactorily resolved.*

By letter dated April 2, 2004, the Nasdaq Listing Investigations department of The Nasdaq Stock Market, Inc. ("Nasdaq") notified the Company that it commenced an inquiry to ensure the Company's ongoing compliance with Nasdaq's inclusion requirements and requested certain information from the Company. The letter further disclosed that after review of the information provided by the Company, Nasdaq could take any action that may be appropriate under its Marketplace Rules including removal of the Company's securities from Nasdaq. In view of the substantial administrative and cash burdens being borne by the Company at this time, the Company has determined that it is in the best interest of shareholders to voluntarily cause its shares to be removed from Nasdaq so that the Company can focus its attention and resources on addressing the other issues addressed in this press release. *The Company has been informed that its securities will be delisted, effective the opening of the markets on Thursday, April 8, 2004.* At an appropriate time, the Company will seek to cause its securities to be quoted on an exchange, Nasdaq or an automated quotation system. There can be no assurance that the Company will be successful.

*The company urges investors not to rely on the company's existing reports filed pursuant to the exchange act, nor on any announcements, press releases or*

> *public statements issued by it or others relating to its financial condition, results of operations or its business or products generally, or any earnings guidance previously released by the company. The company further urges investors to refrain from trading in the company's securities until the company provides formal guidance that the concerns that are the subject of this release have been fully addressed.*

30.     Indeed, on April 8, 2004, the Company's stock was delisted by Nasdaq and is now quoted on the Pink Sheets for unsolicited trading under the symbol vaph.pk. As a result of the delisting from Nasdaq and the Company's stock trading only on the Pink Sheets, the Company, if and when its stock resumes trading, will continue to suffer damages, including but not limited to: (i) a decreased ability to access the capital markets; (ii) an inability (for all practicable purposes) to use Company stock as currency for acquisitions; and (iii) increased difficulty securing debt financing on favorable terms.

31.     In addition, as a direct result of Vaso's delisting, the Company was forced to return a $7.5 million dollar investment made by Millennium Partners ("Millennium") in the Company in March 2004. A subsidiary of Millennium called Riverview Group was the sole buyer of a $7.5 million convertible note issued by Vaso in a private transaction. The Company was forced to return the $7.5 million because Vaso's trading suspension constituted a breach under the terms of the note which was to convert into Vaso stock when it reached $9 per share.

## IMPROPER STATEMENTS MADE DURING THE RELEVANT PERIOD

32.     The Individual Defendants caused the Company filed its Registration Statement on December 11, 2003. According to the Company's Registration Statement, the Company's plans for its key product were as follows:

> Osteon and Athlete's Relief will now be marketed, distributed, commercialized and sold by us in the United States. During the course of the 12 month period immediately following this offering, all deFEET branded product currently in circulation will either be sold or removed from circulation and replaced with an identical product which will be commercialized, marketed and sold by us under the name Termin8 and/or Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be identical to that of deFEET.

All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and commercialized or will enter the marketing and commercialization phase upon the consummation of this offering.

deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. It employs the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area. *In a pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA, 20 severely infected athlete's foot patients were treated and studied over a 42-day period.* There were two groups in the study, one treated with deFEET and the other with Schering-Plough's Tinactin®. In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100% of its patient population in 10 days. Tinactin®, which also uses Tolnaftate in the same concentration as deFEET, required 42 days to cure its first patient. These results demonstrate the ability of the VALE technology to deliver Tolnaftate much more effectively than a product not utilizing VALE technology....

## POST IPO STATEMENTS

33.     On February 19, 2004, the Individual Defendants caused the Company to issue a release entitled "Vaso Active Pharmaceuticals Declares 3 for 1 Stock Split." The release stated in part:

Vaso Active Pharmaceuticals, Inc. (Vaso Active) of Danvers, Massachusetts, announced today that the Board of Directors has declared a 3 for 1 stock split effective in the form of a 200 percent stock dividend payable on or about March 5, 2004 to holders of record of both Class A and Class B common stock as of February 23, 2004. Under the terms of this stock split, holders of the Company's Class A and Class B common stock will receive a dividend of two shares of Class A and Class B common stock for every one share of Class A and Class B common stock held on that record date. The dividend will be paid in authorized but unissued shares of Class A and Class B common stock of the Company.

The Company anticipates that the combined amount of issued and outstanding shares of both the Class A and Class B common stock after the split will be increased from 3,428,000 shares to 10,284,000 shares.

*John Masiz, Chief Executive Officer and Chairman of Vaso Active stated[:] "One of the ways many institutions measure investment appeal is through the liquidity of a security. Recently, there has been significant demand for our common stock at the institutional level. However liquidity has proved to be an obstacle. To help resolve this, the Board of Directors has declared this 3-for-1 stock split to increase our liquidity to the public market place, thus enhancing our securities' appeal to both retail and institutional investors."*