**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **IN RE VASO ACTIVE PHARMACEUTICALS, INC. DERIVATIVE LITIGATION** | ) ) ) ) ) ) | **Master Docket No. 04-10792-RCL** **(Consolidated Derivative Action)** |

**DERIVATIVE PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**FINAL APPROVAL OF PROPOSED SETTLEMENT AGREEMENT**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................................ 1

II.    BACKGROUND ........................................................................................................... 3

       A.   Procedural History .............................................................................................. 3

       B.   Settlement Discussions......................................................................................... 4

       C.   Preliminary Approval ........................................................................................... 4

III.   SUMMARY OF THE DERIVATIVE SETTLEMENT ......................................................... 5

IV.    THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE, AND
       THEREFORE IS APPROPRIATE FOR FINAL APPROVAL ............................................. 5

       1.   Public Policy Strongly Favors the Voluntary Settlement of Complex Class and
            Derivative Litigation ............................................................................................ 7

       2.   The Complexity, Expense and Duration of Litigation.................................................. 8

       3.   Reaction of the Class to the Settlement ........................................................................ 9

       4.   The Stage of the Proceedings and the Discovery Completed ...................................... 10

       5.   The Risks of Establishing Liability and Damages ....................................................... 11

       6.   The Range of Reasonableness of the Settlement and Defendants' Ability to
            Withstand a Greater Judgment ...................................................................................... 12

V.     THE SETTLEMENT INCLUDES AN AGREEMENT TO PAY PLAINTIFFS'
       COUNSELS' ATTORNEYS' FEES AND EXPENSES ....................................................... 144

       A.   Negotiated Attorneys' Fees Are Favored by Courts ................................................... 144

       B.   Plaintiffs' Counsel Are Entitled to Attorneys' Fees and Expenses Because Their
            Efforts Conferred a Substantial Benefit on Vaso and Its Shareholders ...................... 16

VI.    THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS THE PRODUCT
       OF ARM'S-LENGTH NEGOTIATIONS AND IS SUPPORTED BY COUNSEL ............. 17

VII.   CONCLUSION ............................................................................................................... 188

## TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975) ................................................................................ 16

*Armstrong v. Bd. of Sch. Dirs.*,
    616 F.2d 305 (7th Cir. 1980) ................................................................ 17

*Bell Atlantic Corp. v. Bolger*,
    2 F.3d 1304 (3rd Cir. 1993) .................................................................. 12

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) ................................................................. 13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................. 16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2nd Cir. 1974) ................................................................. 7

*Cooper v. Casey*,
    97 F.3d 914 (7th Cir. 1996) .................................................................. 15

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ............................................................................. 15

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ............................................................................. 14

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ................................................................ 15

*Granada Inv., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ................................................................ 8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................. 14

*In re Apple Computer Sec. Litig.*,
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N. D. Cal. Sept. 6, 1991) ........... 13

*In re Beef Industry Antitrust Litig.*,
    607 F.2d 167 (5th Cir. 1979) .................................................................. 9

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ................................................................... 14

*In re Cont'l Ill. Sec. Litig.*,
    985 F.2d 867 (7th Cir. 1993) ................................................................... 15

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir.1981) .................................................................... 10

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...................................................................... 10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...................................................................... 17

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) ................................................................ 10

*In re Lupron Mktg. and Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) .................................................................. 7

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ......................................................... 6,7,13

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ....................................................... 17

*In re Shell Oil Refinery*,
    155 F.R.D. 442 (E.D. La. 1993) ................................................................. 9

*In re U.S. Oil and Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ................................................................... 9

*In re Vitamins Antitrust Litig.*,
    1999-2 Trade Cas. 72 (D.D.C. Nov. 23, 1999) ........................................ 11

*Joseph Rosenkrantz v. Biochemics, Inc., et al.*,
    C.A. 04-10792-RCL ................................................................................. 3

*Lazar v. Pierce*,
    757 F.2d 435 (1st Cir. 1985) ..................................................................... 7

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir.1983) ...................................................................... 8

*Mills v. Elec. Auto-Lite Co.*,
     396 U.S. 375 (1970) ................................................................ 16

*Mills v. Electric Auto-Lite Co.*,
     396 U.S. 375 (1970) ................................................................ 12

*Missouri v. Jenkins*,
     491 U.S. 274 (1989) ................................................................ 7

*Munford v. Munford, Inc.*,
     97 F.3d 449 (11th Cir. 1996) .................................................. 7

*Perry v. FleetBoston Financial Corp.*,
     229 F.R.D. 105 (E.D. Pa. 2005) ............................................. 9

*Robbins v. Kroger Props., Inc.*,
     116 F.3d 1441 (11th Cir. 1997) ............................................ 13

*Schimmel v. Goldman*,
     57 F.R.D. 481 (S.D.N.Y. 1973) .............................................. 8

*Shaw v. Toshiba America Info. Sys., Inc.*,
     91 F. Supp. 2d 942 (E.D. Tex. 2000) .................................... 11

*U.S. v. Davis*,
     261 F.3d 1 (1st Cir. 2001) ...................................................... 7

*U.S. West v. Macallister*,
     No. 92-B-1254, 1992 WL 427772 (D. Colo, Dec. 18, 1992) ............... 12

*Walsh v. Great Atl. & Pac. Tea Co.*,
     726 F.2d 956 (3d Cir. 1983) .................................................. 17

*Zimmerman v. Bell*,
     800 F.2d 386 (4th Cir. 1986) ................................................ 12

**Rules**

Fed. R. Civ. P. 23.1 ........................................................................ 6

**Treatises & Other Authorities**

*Newberg on Class Actions*
     § 22:109 (4th Ed. 2002) .......................................................... 6

*Shareholder Derivative Litigation: Besieging the Board*
     §14.06 (Law Journal Press 2003) .......................................... 16

iv

Plaintiffs Joseph Rosenkrantz and William Pomeroy (collectively, "Derivative Plaintiffs") file this Memorandum in support of Final Approval of the Derivative Settlement reached between Derivative Plaintiffs and nominal Defendant Vaso Active Pharmaceuticals, Inc. ("Vaso" or the "Company"), and Defendants BioChemics, Inc., John Masiz, Kevin J. Seifert, Stephen G. Carter, Bruce A. Shear, Brian J. Strasnick, William P. Adams, Robert E. Anderson, Gary Fromm and Joseph Frattaroli ("Defendants"). By Order issued on October 5, 2005 this Court preliminarily approved the parties' Derivative Settlement, directed notice to stockholders and set a Final Settlement Hearing on December 14, 2005 at 3:00 p.m.[1]

No objections were filed in response to the Derivative Settlement and Derivative Plaintiffs now request that the Court enter a Final Order approving the proposed settlement.

## I.  INTRODUCTION

The Derivative Settlement between the parties, which has already been preliminarily approved by the Court, results from the parties' arms-length negotiations, and provides a fair, adequate and reasonable resolution of the Derivative Plaintiffs' claims. In consideration of this Derivative Settlement, Defendants have agreed, *inter alia*, to implement numerous and substantial corporate governance measures and other changes designed to preclude the occurrence of the wrongdoing alleged in this litigation and to place Vaso in the forefront of companies governed by "best practices."

The Derivative Settlement also provides that, subject to Court approval, Defendants will pay (i) Plaintiffs' Counsel in the above-captioned action fees and expenses in an aggregate

---

[1]     This settlement is part of a global settlement with the securities case. Additionally, the Derivative Settlement encompasses claims brought in the Delaware Court of Chancery under Civil Action No. 682-N (the "Delaware Derivative Litigation"), based on the same facts and circumstances alleged in the above-captioned derivative litigation.  Upon approval of the Derivative Settlement by the Court, the plaintiff in the Delaware Derivative Litigation has agreed to file a Stipulation and Order of Dismissal in that action.

amount of $100,000 consisting of $15,000 in cash and $85,000 face amount two year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) as a unitary part of the Settlement; and (ii) Plaintiffs' Counsel in the Delaware Derivative Action fees and expenses in an aggregate amount of $35,000 consisting of $10,000 in cash and $25,000 face amount two year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) as a unitary part of the Settlement.    Thus, Plaintiffs' counsel do not ask the Court for an award of attorneys' fees and expenses; but, rather seek approval of a unitary settlement which includes the intensely negotiated fees in addition to, and in recognition of, the extensive long-lasting and substantial benefits conferred on Vaso.

The Derivative Plaintiffs have litigated against the Defendants and have contested a broad range of factual and legal issues. While the parties disagree about the merits of this case, and continue to believe that their respected positions are correct, they have reached a compromise that they believe is in the best interest of Vaso.  With an eye to the best interest of the Company, Derivative Plaintiffs have elected to secure the substantial and certain benefits of the settlement with the Defendants now, rather than continue to litigate with the risk, uncertainty, and delay that such continued litigation would entail. The Derivative Settlement constitutes an appropriate resolution of a case of substantial complexity.

For the reasons explained below, the Derivative Settlement is fair, adequate and reasonable and in the best interest of Vaso and its shareholders and this Court should grant Final Approval of the Derivative Settlement.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff Joseph Rosenkrantz commenced his derivative action on April 20, 2004 and Plaintiff Pomeroy commenced his derivative action on June 18, 2004.  On November 19, 2004 this Court entered Pretrial Order No. 1: Consolidation, Appointment of Counsel, and Related Matters ("Pretrial Order No. 1") which, *inter alia*, consolidated the two shareholder derivative actions, *Joseph Rosenkrantz v. Biochemics, Inc., et al.*, C.A. 04-10792-RCL and *William Pomeroy v. Biochemics, et al.*, C.A. 04-11399-RCL, into the above-captioned consolidated derivative action.

On January 12, 2005 this Court entered a Procedural Order of Dismissal which dismissed this consolidated derivative action, without prejudice, pending the occurrence of the earlier of (a) the entry of an order following the resolution of any motion to dismiss filed in the consolidated securities fraud action pending in this Court captioned *In re Vaso Active Pharmaceuticals Securities Litigation*, Case No 04-10708-RCL, or (b) by the filing of answers by all defendants in the same matter.  The Order also provided that the consolidated derivative action shall be restored to the docket upon motion of any party if further proceedings in this Court are required pending the occurrence of the earlier of the two triggering events listed above so long as such motion was filed within thirty days thereof.

On January 20, 2005 all defendants in *In re Vaso Active Pharmaceuticals Securities Litigation*, Case No 04-10708-RCL filed answers in that matter.  By Order of February 3, 2005 the Court granted the Derivative Plaintiffs' motion to restore the case to the docket and the Derivative Plaintiffs filed their Amended Consolidated Derivative Complaint on March 7, 2005 and Defendants filed their Answers to the Amended Consolidated Complaint on March 28, 2005.

### B.   Settlement Discussions

A settlement was ultimately reached in September 2005 that was the product of extensive negotiations between the parties over a nearly six-month period.  *See* Declaration of Timothy L. Miles ("Miles Decl."), at ¶ 6, filed contemporaneously herewith. Shortly after Defendants filed their answers on March 28, 2005 the parties began initial discussions concerning settlement of the Derivative Action.  *Id.* During these initial discussions, the possibility of settling the derivative claims was first discussed.  *Id.*  Plaintiffs' counsel conducted an extensive review of the Company's public filings in order to identify certain corporate governance changes they believed necessary to enhance the Company's overall corporate governance.  *Id.*

Serious negotiations between the parties continued over the next five months, resulting in a formal Stipulation and Agreement of Settlement that was executed on September 21, 2005 in which Defendants agreed to, among other things, the extensive corporate governance changes described herein to settle the derivative claims.  Miles Decl., ¶ 7. Additionally, the amount of attorneys' fees were extensively negotiated after substantive terms of the settlement were agreed to under market conditions by highly experienced counsel.  *Id.*

### C.   Preliminary Approval

By Order dated October 5, 2005, this Court preliminarily approved the Derivative Settlement and securities class action settlement and ordered that notice be given to all Vaso shareholders. The order provided that any objections to the Settlement must be lodged with the Court by November 30, 2005 and set a fairness hearing for 3:00 p.m. on December 14, 2005.  No objections were filed to the Derivative Settlement.  Miles Decl., ¶ 3.

### III.    SUMMARY OF THE DERIVATIVE SETTLEMENT

Following arm's-length negotiations, and in consideration of this Derivative Settlement, Defendants have agreed, *inter alia*, to implement numerous and substantial corporate governance measures, the full terms of which may be found in the Settlement Agreement previously filed with the Court and also in the Miles Declaration filed contemporaneously herewith.    To summarize, these corporate governance changes:  require at least one-half of the Vaso Board to be composed of independent directors and two-thirds of all Board Committees to be compromised of independent directors; sets for a standard for director independence;  sets forth detailed responsibilities for the independent directors;  sets forth detailed and specific duties for each of the Board Committees; sets forth an agreement on shareholder suffrage; implements an agreement on the granting and re-pricing of stock options; implements the creation of an insider trading policy; and sets forth a policy of strict scrutiny on related party transactions.

The settlement also provides that, subject to Court approval, Defendants will pay (i) Plaintiffs' Counsel in the above-captioned action fees and expenses in an aggregate amount of $100,000 consisting of $15,000 in cash and $85,000 face amount two year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) as a unitary part of the Settlement; and (ii) Plaintiffs' Counsel in the Delaware Derivative Action fees and expenses in an aggregate amount of $35,000 consisting of $10,000 in cash and $25,000 face amount two year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) as a unitary part of the Settlement.

### IV.    THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE, AND THEREFORE IS APPROPRIATE FOR FINAL APPROVAL

A derivative settlement may only be voluntarily dismissed or compromised after being approved by the Court. *See* Fed. R. Civ. P. 23.1. In determining whether to approve a proposed settlement, the cardinal rule is that the district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 71 (D. Mass. 2005). This Court has preliminarily approved of the proposed settlement in this case, *i.e.,* the Court has already ruled that the settlement is within the range of what might later be found to be fair, reasonable and adequate and that it does not suffer from any deficiencies such as collusion among the parties.

All parties seek the Court's approval of the Derivative Settlement pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. Since Rule 23 requires that a class action or shareholder derivative action must have court approval before the action is dismissed or compromised, the class action settlement procedure is applicable in reviewing a proposed settlement in a derivative action. Alba Conte and Herbert B. Newberg, 4 *Newberg on Class Actions* § 22:109 (4th Ed. 2002) ("Newberg").

As recently noted by Chief Judge Young, the First Circuit has not articulated a single test in assessing the fairness, reasonableness, and adequacy of a proposed class action settlement. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72. There the Court endorsed and followed the factors used in the Second Circuit which are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the

settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2nd Cir. 1974)), *overruled on other grounds b*y *Missouri v. Jenkins*, 491 U.S. 274 (1989). Likewise, Judge Stearns endorsed the *Grinnell* factors recently in *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005). As demonstrated below, applying these factors it is clear that the Derivative Settlement is fair, adequate and reasonable and should therefore be approved by the Court.

> **1.    Public Policy Strongly Favors the Voluntary Settlement of Complex Class and Derivative Litigation**

First, as a matter of public policy, settlement is a strongly favored method of resolving disputes. Courts here and in all jurisdictions favor the voluntary settlement of contested claims, especially in large, complex cases:

> Last, we should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved. In these days of crowded court calendars, complex disputes, and tardy results, there can be no doubt but that the voluntary resolution of litigation through settlement, constitutes the best quality of justice, and the highest service, that counsel can perform in the interest of his client and the administration of the judicial system.

*Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (Torruella, J., concurring) (footnote omitted), *reh'g and reh'g en banc denied* May 13, 1985. *See also U.S. v. Davi*s, 261 F.3d 1, 27 (1st Cir. 2001) (There is a "strong public policy in favor of settlements, particularly in very complex [cases]."); and *Munford v. Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) ("public policy strongly favors pretrial settlement in all types of litigation…[complex cases] can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive").

This is especially true in the context of shareholder derivative lawsuits.  Indeed, courts have articulated that "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is '"notoriously difficult and unpredictable."' *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir.1983) (quoting *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973). *See also Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (same, quoting Maher). "The Courts, therefore, do not lightly reject such settlements." *Maher*, 714 F.2d at 455; *DWG Corp.*, 962 F.2d at 1205 ("[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with.")

This memorandum presents a summary of the litigation, settlement negotiations, and the terms of the Derivative Settlement. When the applicable law is applied to these facts, it is clear that final approval of this Settlement should be granted.

### 2.      The Complexity, Expense and Duration of Litigation

As noted above, shareholder derivative cases are among the most complex and difficult types of litigation.  *See Maher*, 714 F.2d at 455.  Continued litigation here would be extremely complex, costly and of substantial duration.  A trial could occupy attorneys on both sides for weeks.   Further, a substantial judgment favorable to the Derivative Plaintiffs would unquestionably be the subject of post-trial motions and appeal, which would prolong the case for years.   These considerations strongly support approval of the Derivative Settlement.

The significant time and expenses involved in pursuing the Derivative Plaintiffs' claims to trial could reduce any potential recovery for shareholders in the future.  Based on their expertise and experience in shareholder derivative litigation, Plaintiffs' counsel have determined that the Derivative Settlement provides the Derivative Plaintiffs and the Company with significant benefits that directly address the claims and relief sought in the litigation, which

obviates the need to consume vast amounts of resources in bringing the claims to trial.  In such a situation, the court in *In re Shell Oil Refinery*, 155 F.R.D. 442 (E.D. La. 1993) aptly noted:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, 'it has been held proper to take the bird in the hand instead of a prospective flock in the bush.'

*Id*. at 560 (citation omitted); *see also In re U.S. Oil and Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive").  In light of the costs, and the risks, involved in going to a trial, Plaintiffs' counsel believes that this settlement is in the best interest of the Company and its shareholders.

### 3.      Reaction of the Class to the Settlement

The reaction of the stockholders of the Company to the Settlement strongly favors approval.  The absence of objection to the terms of the Settlement by stockholders is an important factor in evaluating the fairness, reasonableness and adequacy of the Settlement. *See In re Beef Industry Antitrust Litig.*, 607 F.2d 167, 180 (5th Cir. 1979), *reh'g and reh'g en banc denied* Dec. 21, 1979 (significant element in approving settlement was that there were no objections from class members).

Notice of the terms of the Derivative Settlement has been sent to Vaso's current shareholders.  Not a single shareholder has objected to the terms of the Derivative Settlement. Miles Decl., ¶ 6. Accordingly, this factor overwhelmingly favors approval of the Derivative Settlement.  *See Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (Fact that "not a single class member objected to the proposed settlement . . . weighs greatly in favor of approving the settlement.").

4.        **The Stage of the Proceedings and the Discovery Completed**

Courts consider the stage reached in the proceedings and the volume of discovery conducted prior to approving a settlement to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995).  As the public policy favors settlement in complex cases, "only some reasonable amount of discovery should be required" before reaching a settlement, such that parties "are able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 377 (D.D.C. 2002) (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir.1981)).

Plaintiffs' Derivative Counsel engaged in a comprehensive investigation of the claims prior to filing the Complaint and extensive additional investigation afterwards. Miles Decl., ¶ 2. This included an extensive review of virtually every publicly filed document by Vaso including the Company's filings with the Securities Exchange Commission and its press releases during the relevant period. *Id.*  Moreover, Plaintiffs' Derivative Counsel reviewed numerous discovery documents voluntarily produced by Defendants.  *Id.* In Derivative Counsels' opinion, the Derivative Settlement is valuable, and forecloses the extraordinary expense of trial preparation, the incalculable cost of time and attention diverted from the day-to-day business operations of the Company, and of course the burden to this Court of protracted and complex litigation.  *Id.* at ¶ 14.

This investigation gave Plaintiffs' Derivative Counsel the ability to evaluate the relative merits of each side's case and enabled them to enter into the Derivative Settlement cognizant of the case's strengths and weaknesses.   Clearly, the parties have had an adequate opportunity over

the last year of litigating this derivative case to understand the strengths and weaknesses of their respective positions adequately enough to negotiate a good faith settlement. While it is certainly possible that a recovery on behalf of Vaso could be established at trial, such a result assumes that all significant liability and damage issues would have been resolved in Plaintiffs' favor.

### 5.    The Risks of Establishing Liability and Damages

The strength of the Plaintiffs' case in part depends upon the complexity of proving the unlawful conduct alleged; accordingly, "it is entirely appropriate to reward expeditious and efficient resolution of disputes" through settlement where novel and complex issues exist, and a favorable outcome to the plaintiff may be highly uncertain. *See, e.g., In re Vitamins Antitrust Litig.*, 1999-2 Trade Cas. ¶ 72,726 (D.D.C. Nov. 23, 1999); *see also Shaw v. Toshiba America Info. Sys., Inc.*, 91 F. Supp. 2d 942, 960 (E.D. Tex. 2000) (finding that the complicated nature of the problem and the vigorous defense raised by the defendants supported final approval of the settlement agreement);

As the Court in *Maher* observed, a shareholder derivative lawsuit like the case at bar is "notoriously difficult and unpredictable" to litigate. 714 F.2d at 455. Although Plaintiffs believe that the claims asserted herein were meritorious, in light of the obstacles posed by this type of litigation, proving liability on behalf of Defendants was by no means a foregone conclusion. For example, Plaintiffs did not make a pre-litigation demand for action on the Board as is typically required and, though the Complaint plead an excuse from the demand requirement, this issue is always fiercely litigated in derivative cases as it no doubt would have been here. Defendants also could be expected to contend that their actions were protected by the "business judgment" rule or were otherwise non-actionable. Moreover, even if Plaintiffs prevailed on these arguments on a motion for summary judgment, the continued litigation of these issues would utilize an

11

abundant amount of the Court's time and would subject the shareholders or Vaso to the very real risk of no relief.

Thus, instead of the risk of failure to achieve a benefit to Vaso inherent in continued litigation, the Derivative Settlement guarantees a good result with the implementation of sweeping corporate governance changes which will inure to the Company and its shareholders for years to come.

6.    **The Range of Reasonableness of the Settlement and Defendants' Ability to Withstand a Greater Judgment**

Given the obstacles and uncertainties inherent in this complex litigation, the Derivative Settlement is a very good result and is unquestionably superior to another "possibility" which certainly exists – little or no recovery. Indeed, standing alone, corporate governance changes are adequate for a settlement approval. The United States Supreme Court has stated that the benefit conferred need not be pecuniary in nature in order to be deemed substantial. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 396 (1970); *see also*, *Bell Atlantic Corp. v.* Bolger, 2 F.3d 1304, 1311 (3rd Cir. 1993) (approving derivative settlement mandating structural changes in corporate governance and stating "nonpecuniary benefits to the corporation may support a settlement."); *DWG Corp.*, 962 F.2d. 1207 (settlement of derivative action approved where defendants agreed to changes in corporate governance); *Zimmerman v. Bell,* 800 F.2d 386, 391 (4th Cir. 1986) (nonmonetary derivative settlement relief adequate when it provided guidelines for "future management responses to tender offers and takeover bids."); *Maher*, 714 F.2d at 466 (approving shareholder derivative action consisting on nonmonetary relief); *U.S. West v. Macallister*, No. 92-B-1254, 1992 WL 427772 (D. Colo, Dec. 18, 1992) (approving settlement including derivative claim and noting benefit of therapeutic portion of settlement through public policy

committee and the benefit to not only the corporation but the public benefit of this type of relief as well).

Moreover, even if Plaintiffs were to overcome the substantial risk of continued litigation and were successful in establishing liability, there was a real and significant risk faced by Plaintiffs in proving damages.  The amount of range of damages that Vaso would have recovered or equitable relief it could have obtained remained uncertain. Given these uncertainties, settlement of the derivative claims makes sense.  *In re Relafen Antitrust Litig.*, 231 F.R.D. at 73.

Finally, even if Plaintiffs were able to prevail at trial on both liability and damages, it is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal.  Substantial judgments awarded by trial courts have been reversed on appeal.  *See*, *e.g.*, *Robbins v. Kroger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) (Court of Appeals overturned $81 million dollar jury verdict for the plaintiff class and ordered the litigation dismissed); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N. D. Cal. Sept. 6, 1991) ($100 million jury verdict in favor of plaintiff overturned and j.n.o.v. entered in favor of defendant); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

Add to these appellate risks the difficulty and unpredictability of a lengthy and complex trial – where witnesses could suddenly become unavailable or the factfinder could react to the evidence in unforeseen ways – and the benefits of the Derivative Settlement become all the more apparent.  These factors weigh even stronger here give the limited resources of Vaso to satisfy any judgment. Thus, the extensive corporate governance changes are well within the range of any possible recovery, and in fact, provide much more benefits in the long-term than perhaps any money judgment even assuming one could be obtained.

**V.    THE SETTLEMENT INCLUDES AN AGREEMENT TO PAY PLAINTIFFS' COUNSELS' ATTORNEYS' FEES AND EXPENSES**

**A.    Negotiated Attorneys' Fees Are Favored by Courts**

As part of the Derivative settlement, Defendants have agreed to pay Plaintiffs' Counsels' attorneys' fees and expenses in an aggregate amount of $135,000 in recognition of the benefits provided to Vaso as a result of the prosecution and settlement of this action. Specifically, Defendants have agreed to pay (i) Plaintiffs' Counsel in the above-captioned action fees and expenses in an aggregate amount of $100,000 consisting of $15,000 in cash and $85,000 face amount two year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) as a unitary part of the Settlement; and (ii) Plaintiffs' Counsel in the Delaware Derivative Action fees and expenses in an aggregate amount of $35,000 consisting of $10,000 in cash and $25,000 face amount two year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) as a unitary part of the Settlement.

The United States Supreme Court has encouraged a consensual resolution of attorneys' fees **as the ideal toward which litigants should strive**.  In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court said:

> A request for attorney's fees should not result in a second major litigation. **Ideally, of course, litigants will settle the amount of a fee**.

*Id.* at 437 (emphasis added).  *Accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees).  Moreover, the United States Supreme Court has held that the parties may properly negotiate not only the settlement of a representative action, but also the payment of attorneys' fees.  *Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738 & n.30 (1986). Here, the agreed to fee is reasonable considering: (1) the time spent (248.45hours) and expenses incurred ($1,785.77); (2) the substantial benefit conferred upon the Company through the value

of the corporate governance changes; and (3) the risk assumed by agreeing to defer receipt of 85% of the fee. Miles Decl., ¶ 17.

Given our legal system's reliance on private litigants to enforce substantive provisions of law through representative actions, attorneys providing these enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it would otherwise be economic for defendants to practice injurious behavior. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980). It has therefore been urged (most persistently by Chief Judge Richard Posner of the Seventh Circuit) that in defining a "reasonable fee" in representative actions, the law should "mimic the market." *See, e.g.*, *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set. The judge, in other words, is trying to mimic the market in legal services.") (citations omitted); *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) ("the reasonable fee is capped at the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought"); and *In re Cont'l Ill. Sec. Litig.*, 985 F.2d 867, 868 (7th Cir. 1993).

Here, the Court is not asked to set the fee and it does not need to speculate what fee might have been negotiated. Consistent with the foregoing, the parties negotiated the amount of fees and expenses Vaso will pay to Plaintiffs' Counsel for their substantial work for the benefit of Vaso and its shareholders. The result is an amount that reflects a compromise reached through arm's-length bargaining by informed parties. Thus, the agreement to pay attorneys' fees and expenses reflects Vaso's valuation of the benefits provided to it through the settlement. The virtue of the negotiation of a fee by the adversary parties to the settlement (defendants who must pay the fee versus lawyers who wish to receive it) is that "[m]arkets know market values better

than judges do." *Cont'l Ill.*, 962 F.2d at 570.  Vaso is represented by highly skilled lawyers, and does not need (and has not sought) protection from the Court for the results of its own negotiations regarding the amount of the fees and expenses to be paid.

### B. Plaintiffs' Counsel Are Entitled to Attorneys' Fees and Expenses Because Their Efforts Conferred a Substantial Benefit on Vaso and Its Shareholders

Under the "substantial benefit" doctrine, counsel who prosecute a shareholders' derivative case that results in benefits being conferred on a corporation are entitled to attorneys' fees and costs.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975).  Payment of attorneys' fees is appropriate under the substantial benefit rule when the litigation indirectly confers substantial benefits on an ascertainable group.  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970).  In addition, the substantial benefit obtained for the company need not be monetary:

> In class action litigation, attorneys' fees are normally premised on the existence of a "common fund" awarded to the class from which the plaintiffs' attorneys' fees may be deducted.  However, in shareholder derivative actions, monetary recovery is not a required predicate to an award of attorneys' fees as long as a "substantial benefit" of some form has been rendered to the corporation as a result of the plaintiff's attorneys' efforts.  The substantial benefit may take the form of remedial corporate action to rectify the alleged wrongdoing . . . .

Ralph C. Ferrara, Kevin T. Abikoff, Laura Leedy Gansler, *Shareholder Derivative Litigation: Besieging the Board* §14.06, at 14-25 to 14-26 (Law Journal Press 2003).

Vaso's agreement to pay Plaintiffs' Counsel's attorneys' fees and expenses as part of the settlement is fully supported under the substantial benefit theory because, as a result of the litigation, Vaso will implement sweeping and substantial corporate governance changes which will result in millions of dollars in increased market capitalization.  Vaso agreed to pay $135,000 in fees and expenses based on its perceived value of the settlement.  Moreover, the fee

negotiations were based upon a knowledgeable analysis of the appropriate fee for the benefits achieved. It is important to recognize that Plaintiffs' Counsel negotiated with their adversaries who saw the efforts of Plaintiffs' counsel first hand. Further, counsel for Defendants have litigated on the defense side for many years and are aware of fees paid in other actions of a similar nature in which they have been involved. Here the fee negotiated between the parties is based on both sides' perceived value of the benefits provided to Vaso. The end result reflects the parties' experience as to what is appropriate and fair.

## VI.    THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS THE PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS SUPPORTED BY COUNSEL

A settlement is considered presumptively fair, where, as here, the parties, through capable counsel, have engaged in arm's-length negotiations. *See, e.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983). Plaintiffs' Counsel negotiated with Defendant' counsel over the breadth and scope of the corporate governance changes for over 6 months.. Miles Decl., ¶ 6. There were numerous discussions among highly experienced and capable counsel concerning the specifics of key corporate government measures.

The Court is also entitled to rely heavily on the opinion of competent counsel. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (counsel's assessment of the settlement is "entitled to considerable weight"). Plaintiffs' counsel have extensive experience in shareholder litigation and believe that the settlement is an outstanding result and in the best interest of Vaso and its shareholders. Miles Decl., ¶ 3, 14-15, 17.

## VII.    CONCLUSION

This settlement will put Vaso at the forefront with respect to corporate governance.  It is a superior result and is extremely beneficial to Vaso and its shareholders.  Therefore, Plaintiffs and Plaintiffs' Counsel respectfully request the Court to approve the settlement.

DATED: December 6, 2005.                    Respectfully submitted,


                                            /s/ Timothy L. Miles
                                            By:    Timothy L. Miles

                                            Douglas S. Johnston, Jr. (*pro hac vice*)
                                            George E. Barrett (*pro hac vice*)
                                            Timothy L. Miles (*pro hac vice*)
                                            BARRETT, JOHNSTON & PARSLEY
                                            217 Second Avenue, North
                                            Nashville, TN 37201
                                            Telephone: 615/244-2202
                                            Facsimile: 615/252-3798
                                            djohnston@barrettjohnston.com
                                            gbarrett@barrettjohnston.com
                                            tmiles@barrettjohnston.com

                                            Plaintiffs' Lead Counsel

                                            Mary T. Sullivan, BBO #487130
                                            SEGAL ROITMAN & COLEMAN
                                            11 Beacon Street, Suite 500
                                            Boston, MA 02108
                                            Telephone: 617/742-0208
                                            Facsimile: 617/742-2187

                                            Plaintiffs' Liaison Counsel

                                            Brian J. Robbins
                                            Jeffrey P. Fink
                                            ROBBINS UMEDA & FINK, LLP
                                            1010 Second Avenue, Suite 2360
                                            San Diego, CA 92101
                                            Telephone: 619/525-3990
                                            Facsimile: 619/525-3991

                                            Plaintiffs' Counsel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a true and exact copy of the foregoing has been served on all Filing Users through the Court's Electronic Filing System on this the 6th day of December, 2005.


/s/ Timothy L. Miles
Timothy L. Miles

F:\GEORGE\Vaso Active Pharmaceuticals\Final Settlement Pleadings\Memo Supp. Final Approval.rtf

19