UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE VASO ACTIVE PHARMACEUTICALS, INC. DERIVATIVE LITIGATION ) ) ) ) ) | Master Docket No. 04-10792-RCL (Consolidated Derivative Action) |

**DECLARATION OF TIMOTHY L. MILES IN SUPPORT OF**
**FINAL APPROVAL OF PROPOSED SETTLEMENT AGREEMENT**

I, Timothy L. Miles, declare as follows:

**I.   INTRODUCTION**

1. I am an associate in the law firm of Barrett, Johnston & Parsley, one of the firms representing the plaintiffs in this derivative action and the Court appointed Lead Counsel for the Plaintiffs. I am very familiar with this firm's role in the case and was extensively involved in all aspects of this litigation including settlement discussions. I submit this declaration in support of final approval of the proposed settlement agreement.

2. I have been intimately involved in all aspects of the Derivative Litigation. Prior to and after drafting the initial complaint and consolidated complaint, I reviewed numerous Securities Exchange Commission filings for Vaso Active Pharmaceuticals, Inc. ("Vaso" or the "Company") as well as virtually all other publicly available documents pertaining to Vaso including every press release issued by the Company during the relevant period. Additionally, I reviewed the numerous discovery documents which were voluntarily produced by Defendants. I was involved in all aspects of this Litigation from initiation through settlement.

3. The Derivative Settlement between the parties resulted from the parties' arms-length negotiations, and in my opinion, provides a fair, adequate and reasonable resolution of the

1

derivative Plaintiffs' claims. By Order issued on October 5, 2005 this Court preliminarily approved the parties' Derivative Settlement, directed notice to stockholders and set a Final Settlement Hearing on December 14, 2005 at 3:00 p.m.[1] No shareholders have objected to the Derivative Settlement.

## II. BACKGROUND

4. Plaintiff Joseph Rosenkrantz commenced his derivative action on April 20, 2004 and Plaintiff Pomeroy commenced his derivative action on June 18, 2004. On November 19, 2004 this Court entered Pretrial Order No. 1: Consolidation, Appointment of Counsel, and Related Matters ("Pretrial Order No. 1") which, *inter alia*, consolidated the two shareholder derivative actions, *Joseph Rosenkrantz v. Biochemics, Inc., et al.*, C.A. 04-10792-RCL and *William Pomeroy v. Biochemics, et al.*, C.A. 04-11399-RCL into the above-captioned consolidated derivative action.

5. On January 12, 2005 this Court entered a Procedural Order of Dismissal which dismissed this consolidated derivative action, without prejudice, pending the occurrence of the earlier of (a) the entry of an order following the resolution of any motion to dismiss filed in the consolidated securities fraud action pending in this Court captioned *In re Vaso Active Pharmaceuticals Securities Litigation*, Case No 04-10708-RCL, or (b) by the filing of answers by all defendants in the same matter. The Order also provided that the consolidated derivative action shall be restored to the docket upon motion of any party if further proceedings in this

---

[1] This settlement is part of a global settlement with the securities case. Additionally, the Derivative Settlement encompasses claims brought in the Delaware Court of Chancery under Civil Action No. 682-N (the "Delaware Derivative Litigation"), based on the same facts and circumstances alleged in the above-captioned derivative litigation. Upon approval of the Derivative Settlement by the Court, the plaintiff in the Delaware Derivative Litigation has agreed to file a Stipulation and Order of Dismissal in that action.

Court are required pending the occurrence of the earlier of the two triggering events listed above so long as such motion was filed within thirty days thereof.

6. On January 20, 2005 all defendants in *In re Vaso Active Pharmaceuticals Securities Litigation*, Case No 04-10708-RCL filed answers in that matter. By Order of February 3, 2005 the Court granted the Derivative Plaintiffs' motion to restore the case to the docket and the Derivative Plaintiffs filed their Amended Consolidated Derivative Complaint on March 7, 2005 and Defendants filed their Answers to the Amended Consolidated Complaint on March 28, 2005.

### III. SETTLEMENT DISCUSSIONS

7. A settlement was ultimately reached in September 2005 that was the product of extensive negotiations between the parties over a nearly six-month period. Shortly after Defendants filed their answers on March 28, 2005 the parties began initial discussions concerning settlement of the Derivative Action. During these initial discussions, the possibility of settling the derivative claims was first discussed. Plaintiffs' counsel conducted an extensive review of the Company's public filings in order to identify certain corporate governance changes they believed necessary to enhance the Company's overall corporate governance.

8. Serious negotiations between the parties continued over the next five months, resulting in a formal Stipulation and Agreement of Settlement that was executed on September 21, 2005 in which Defendants agreed to, among other things, the extensive corporate governance changes described herein to settle the derivative claims. Additionally, the attorneys' fees were extensively negotiated after substantive terms of the settlement were agreed to under market conditions by highly experienced counsel.

**IV.    SETTLEMENT TERMS**

      9.    Following arm's-length negotiations, counsel for the parties to this action have agreed upon the following settlement terms:

      1.    The stipulation of settlement requires Vaso to adopt certain corporate governance provisions to enhance the governance of the Company and/or independence of the Vaso Board of Directors. Such new governance measures shall be enacted for the dual purpose of addressing and preventing the type of issues that resulted in the securities and derivatives litigation and for the purpose of enhancing long-term value for Vaso's shareholders.

      2.    The following corporate governance changes represent future changes that will be implemented by Vaso as a direct and substantial result of the prosecution and/or settlement of the Derivative Litigation:

      A.    The Board of Directors

            1.    Unless otherwise specified herein, at least one-half of the Board and two-thirds of all Committees shall be comprised of "independent directors," as described herein.

      B.    Director Independence

      The Board's standard for independence shall be the standard used by the American Stock Exchange in determining independence of directors on Audit Committees. To be deemed "independent" in any calendar year, a director will have to satisfy the following qualifications. He or she:

            1.  Has not been employed by the Company or its subsidiaries or affiliates in an executive capacity within the last five calendar years;

            2.   Has not received, during the current calendar year or any of the three immediately preceding calendar years, remuneration, directly or indirectly, other than de minimis remuneration, as a result of service as, or being affiliated with an entity that serves as (a) an advisor, consultant, or legal counsel to the Company or to a member of the Company's senior management; (b) except as provided herein, a significant supplier of the Company; or (c) except as provided herein, a significant customer of the Company;

            3.   Has no personal service contract(s) with the Company, or any member of the Company's senior management;

            4.   Is not an employee or officer with a not-for-profit entity that receives significant contributions from the Company;

4

    5.  During the current calendar year or any of the three immediate preceding calendar years, has not had any business relationship with the Company for which the Company has been required to make disclosure under Regulation S-K of the SEC, other than for service as a director or for which relationship no more than de minimis remuneration was received in any one such year;

    6.  Is not employed by a public company at which an executive officer of the Company serves as a director;

    7.  Has not had any of the relationships described in subsections 1-6 above with any affiliate of the Company;

    8.  Is not a member of the immediate family of any person described in subsections 1-4 above;

    9.  Is not employed as an executive of another entity where any of the Company's executives serve on that entity's Compensation Committee; and

    10.  Does not have beneficial ownership interest of five percent or more in an entity (other than BioChemics, Inc. and suppliers, distributors and sales agents) that has received remuneration, other than de minimis remuneration, from the Company, its subsidiaries, or affiliates. De minimis remuneration is defined as (a) direct remuneration of $60,000 or less received from the Company, its subsidiaries, or affiliates during a calendar year (other than compensation); or (b) indirect remuneration paid to an entity if such remuneration does not exceed the lesser of $5 million or one percent of the gross revenues of the entity and did not directly result in an increase in the compensation received by the director from that entity.

C.  Responsibilities of the Independent Directors

    1.  The independent directors shall meet separately from the rest of the Board of Directors at least once a year.

    2. At the inaugural meeting of the independent directors and at the annual meeting of the independent directors, the independent directors shall elect a Lead Independent Director.

    3. The Lead Independent Director shall be responsible for coordinating the activities of the independent directors. In addition to the duties of all Board members (which shall not be limited or diminished by the Lead Independent

Director's role), the specific responsibilities of the Lead Independent Director are as follows:

(a)  to advise the Chairman of the Board as to an appropriate schedule of Vaso Board meetings, seeking to ensure that the independent directors can perform their duties responsibly while not interfering with the flow of Vaso's operations;

(b)  to provide the Chairman of the Board with input as to the preparation of agendas for the Board and Committee meetings;

(c)  to advise the Chairman of the Board as to the quality, quantity, and timeliness of the flow of information from Vaso's management that is necessary for the independent directors to effectively and responsibly perform their duties, and although Vaso's management is responsible for the preparation of materials for the Board, the Lead Independent Director may specifically request the inclusion of certain material;

(d)  to recommend to the Chairman of the Board the retention of consultants who report directly to the Vaso Board;

(e)  to assist the Board and Vaso's officers in assuring compliance with and implementation of the Company's corporate governance policies and be principally responsible for recommending revisions to the corporate governance policies;

(f)  to coordinate and develop the agenda for, and moderate executive sessions of, Vaso's Board's independent directors, and act as principal liaison between the independent directors and the Chairman of the Board on sensitive issues;

(g)  to evaluate, along with the members of the Compensation Committee and the full Vaso Board, the CEO's performance and meet with the CEO to discuss the Board's evaluation; and

(h)  to recommend to the Chairman of the Board the membership of the various Vaso Board Committees, as well as selection of the Committee Chairs.

D.  Board Committees

1.  The Chairman of the Board of Directors shall not be the CEO of the Company. However, the Chairman of the Board of BioChemics, Inc., Vaso's parent, or any BioChemics, Inc. director also may be the Chairman of the Board of Vaso or a Director of Vaso.  The Chairman of the Board must meet the definition of "independent" as described herein.

6

   2.  The Company's by-laws should provide for annual election of the non-executive chairman, with a maximum tenure of six years.

   3.  All members of the Board of Directors shall serve for no more than ten years from the date of entry of the Final Judgment of Dismissal.

E.  Compensation Committee

   1.  The Compensation Committee shall set annual and long-term performance goals for the CEO. The Compensation Committee shall meet annually to evaluate the CEO's performance against such goals and determine compensation adjustments based on whether these goals have been achieved.

   2.  The Compensation Committee shall meet at least once each calendar year in executive session, without the CEO.

   3.  The Compensation Committee shall adopt, with Board of Directors' approval, a resolution setting forth the following compensation principles:

   (a)  Compensation arrangements shall emphasize pay for performance and encourage retention of those employees who enhance the Company's performance.

   (b)  Compensation arrangements shall promote ownership of the Company's stock to align the interests of management, directors and stockholders.

   (c)  In approving compensation, the recent compensation history of the executive, including special or unusual compensation payments, shall be taken into consideration.

   (d)  Cash incentive compensation plans for senior executives shall link pay to achievement of financial goals set in advance by the Compensation Committee.

   (e)  The Compensation Committee shall review annually the compensation of directors.

   (f)  The granting of options for senior executives and cash compensation shall be based on the performance of Vaso in obtaining success in long term goals, including an increase in shareholders' equity.

   4.  The Compensation Committee shall publish a report annually in the Company's Proxy Statement setting forth their justification for their

7

compensation determinations for the CEO and CFO. This Report should also include a discussion of the Compensation Committee's compensation principles discussed in the preceding paragraph.

F. Audit and Oversight Committee

1. The Board of Directors shall adopt a resolution broadening the mandate of the Audit Committee to create the Audit and Oversight Committee, which Committee shall perform the following functions in addition to the functions the Audit Committee currently performs:

(a) In order to ensure that appropriate management and supervision is being afforded to significant actual and potential litigation claims, the Audit and Oversight Committee will have direct access to and meet as needed with the Risk Compliance Officer, without Company management present, as appropriate, who in turn will meet with the management employees responsible for overseeing litigation the Company is involved in; and

(b) The Audit and Oversight Committee will regularly report all significant findings to the entire Board and relay information concerning all material aspects of all litigation the Company is involved in with sufficient detail to allow the Board to provide meaningful oversight.

2. The Audit and Oversight Committee shall have at least one member with an accounting background.

3. The Audit and Oversight Committee shall establish and enforce a policy that any independent auditor responsible for auditing Vaso's financial statements shall not provide any consulting services to Vaso absent prior written consent of the Audit & Oversight Committee.

4. The Audit and Oversight Committee should seek out all feasible alternatives for improving transparency and for verifying compliance with the Company's ethics pledge.

5. The Audit and Oversight Committee must approve all related party transactions.

G. Corporate Governance Committee

1. The Board shall adopt a resolution creating a Corporate Governance Committee. Each director, upon appointment, shall complete a course of introduction to the Company, either provided or approved by the Corporate Governance Committee. In addition, every director shall annually complete refresher training relating to accounting, disclosure, governance,

compensation and/or industry developments, in accordance with guidelines to be set by the Corporate Governance Committee.

2. The Corporate Governance Committee shall meet with each qualified prospective new Board nominee and then shall recommend whether such individual should be nominated for membership to the Board. Any prospective new Board nominee recommended by any shareholder shall be considered by the Corporate Governance Committee. The decision on whether to recommend such person to the Board shall be disclosed to shareholders after a full review by the current Board. Potential disqualifying conflicts of interest to be considered shall include:

   (a)  Interlocking directorships; and

   (b) Substantial business, civic and/or social relationships with other members of the Board that could impair the prospective Board member's ability to act independently from the other Board members.

3. The performance of the non-executive chairman shall be evaluated each year by the Board. Where the chairman is not sufficiently active or successful in providing meaningful leadership for the Board, he or she should be replaced. The By-Laws shall provide for an annual election of the non-executive chairman by secret ballot.  The vote shall be by the entire Board commencing on the anniversary of the final resolution of the Derivative Litigation.  In the event that a "no confidence" vote is reached by a majority of the Board (the chairman not voting), the Corporate Governance Committee, acting pursuant to its nominating powers, shall nominate, within three months, at least three candidates to be voted upon by the entire Board.  In addition, the nominations shall include any candidate proposed by any shareholder with a 5% or more voting interest.

4. The Corporate Governance Committee shall consist of not fewer than three members, each of whom shall possess expertise in governance issues or have substantial leadership experience.

5. The By-Laws shall set forth the Corporate Governance Committee's role and responsibilities, which should incorporate the following functions:

   (a)  nominating individuals to serve on the Board or its committees (or as a committee chairman);

   (b) recommending to shareholders compensation levels for the Board;

   (c) recommending changes in the duties and responsibilities of committees; and

    (d) overseeing all proposed amendments to the Articles, By-Laws, governance guidelines or committee charters.

  6. The Board shall establish a formal charter for the Corporate Governance Committee.

  7. The By-Laws shall require the Corporate Governance Committee to meet not less than four times per year.

H.  Shareholder Suffrage

  1. Shareholders with an aggregate 5% of shares outstanding shall be permitted to nominate a candidate for director, with the requirement that any such nominee, if not accepted as a nominee of the Board of Directors, will appear on Vaso's Proxy as a candidate with the designation "Shareholder Nominated". The candidate must provide Vaso with his consent to serve, must consent to a full credit and background check by Vaso, and must complete a Director and Officer Questionnaire; the nominating shareholder and the nominee must disclose to Vaso all dealings between them.

  2. Shareholders with an aggregate 5% of shares outstanding shall be permitted to call a special meeting of shareholders; and

  3. Subject to amendment of Vaso's Articles of Incorporation, a simple majority of votes of the Class A and B shareholders voting together at any annual or special meeting shall have the power to remove a director, with or without cause.

  4. The Board of Directors shall be prohibited from amending or repealing any ByLaw provisions adopted pursuant to this Settlement.

I.  Stock Options

For a period of at least 5 years, no options issued before the date of entry of the Final Judgment of Dismissal shall be repriced at a lower exercise price without prior shareholder approval. All plans for granting of options must be approved by the Company's stockholders. The number of shares granted in relation to each option provided each year to each non-employee director pursuant to the Company's 2003 NonEmployee Director Compensation Plan shall be limited to no more than 50,000 shares, subject to full anti-dilution protection.

J.  Creation of an Insider Trading Policy

Vaso shall adopt an insider trading policy. The policy shall be signed by each executive officer and director. The policy shall include penalties, including termination of employment for any substantive violation of the policy, e.g.,

improper trading or tipping (as opposed to procedural, e.g., late reporting of transactions). Substantive violations of the policy shall be reportable by the Company to the SEC.

K.  Strict Scrutiny of Related Party Transactions

Vaso shall not make strategic equity investments in or enter into material contracts (defined as full value for service or products exceeding $50,000) with companies in which a director or executive officer has an ownership interest of 2% or more absent the approval of the Corporate Governance and Audit Committees.

L.  Time Limitations

The foregoing corporate governance changes shall expire or terminate after three years of any class of Vaso's securities being listed on the Nasdaq Stock Market, Inc. or a registered securities exchange, unless, in order to qualify for a listing on Nasdaq or the Exchange, the provision must be eliminated or modified, in which case Vaso shall be permitted to do so.

10. The settlement also provides that, subject to Court approval, Defendants will pay (i) Plaintiffs' Counsel in the above-captioned action fees and expenses in an aggregate amount of $100,000 consisting of $15,000 in cash and $85,000 face amount two year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) as a unitary part of the Settlement; and (ii) Plaintiffs' Counsel in the Delaware Derivative Action fees and expenses in an aggregate amount of $35,000 consisting of $10,000 in cash and $25,000 face amount two year 5% subordinated callable notes convertible at $1.75 per share (with full dilution protection) as a unitary part of the Settlement.

V.  **THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE UNDER THE CIRCUMSTANCES AND WARRANTS APPROVAL**

11. It is the considered and informed judgment of Plaintiffs' counsel, based on all the proceedings and evidence to date and their extensive experience in litigating derivative actions, that the Derivative Settlement now before the Court is fair, reasonable and adequate and in the best interest of Vaso. The settlement contemplates a substantial undertaking of significant and

11

extensive corporate governance reform. As a result of extensive negotiations in the derivative action and intensive arm's length negotiations with Vaso and the other Defendants, Plaintiffs' counsel has achieved significant and extensive measures of reform to be maintained by Vaso.

12. Vaso's corporate governance reforms are significant because the therapeutics will create a corporate environment where the events complained of by the Plaintiffs are far less likely to occur due to the improved oversight by Vaso's Board. The Derivative Settlement will place Vaso in the forefront of those companies governed by the "best practices."

13. While Plaintiffs' counsel believes they could have prevailed at trial, they are also cognizant of the substantial risk of continued litigation especially given the financial condition of Vaso. Not only would the parties need to complete discovery, engage in taking and defending depositions, designate experts, conduct expert discovery, address conflicting expert opinions and brief and argue multiple pre-trial motions, but, if a favorable judgment was rendered for Plaintiffs they would most likely engage in significant post-trial motions and appeal, which would prolong this action for years with the ultimate outcome unknown. Further, complex legal and factual issues would be contested by a extremely talented and resourceful defense team which would increase the possibility of no recovery for Vaso.

14. Reviewed in *toto*, this settlement comes at a stage at the litigation foreclosing the extraordinary expense of ongoing, protracted discovery and trial preparation, the incalculable costs of time and attention diverted from the day-to-day business operations of Vaso, and of course the burden to the Court of ongoing complex litigation. Consequently, Plaintiffs' counsel have concluded that the benefits conferred on Vaso by the settlement, if approved by the Court, will result in a much more favorable outcome, and far more corporate governance that might be

had through further protracted litigation and/or trial, will allow Vaso to prevent the occurrence of similar matters in the future and will put these matters to rest.

15. Thus, the settlement represents an excellent outcome for Vaso and there can be no dispute this settlement was the result of substantial, good-faith, arm's length negotiations.

## VI. EXPERIENCE AND EXPERTISE OF PLAINTIFFS' COUNSEL AND RESONABLENESS OF AGREED TO FEE

16. It is the collective opinion of Plaintiffs' counsel that the settlement achieved in the Derivative Litigation is fair, reasonable and adequate and should be approved by the Court. The expertise of Plaintiffs' counsel is an important factor in assessing the adequacy of the Derivative Settlement. Plaintiffs' counsel are experienced and skilled practitioners in the field of complex litigation, and particularly, shareholder derivative litigation. Plaintiffs' counsel have been responsible for significant settlements and well as legal decisions which enable litigation such as this to be successfully prosecuted.

17. The agreed to fee is reasonable considering: (1) the time spent (248.45 hours) and expenses incurred ($1,785.77); (2) the substantial benefit conferred upon the Company through the value of the corporate governance changes; and (3) the risk assumed by agreeing to defer receipt of 85% of the fee.

## VII. CONCLUSION

18. Based on the foregoing and for the reasons explained in the accompanying memorandum, I respectfully submit the agreed upon settlement between Plaintiffs and Defendants should be approved because it is in the best interest of Vaso and its shareholders, and is unquestionably fair, reasonable and adequate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 6th day of December, 2005.

/s/Timothy L. Miles  
Timothy L. Miles

## CERTIFICATE OF SERVICE

I hereby certify a true and exact copy of the foregoing has been served on all Filing Users through the Court's Electronic Filing System on this the 6th day of December, 2005.

/s/ Timothy L. Miles  
Timothy L. Miles

F:\GEORGE\Vaso Active Pharmaceuticals\Final Settlement Pleadings\Declaration TLM.doc